Congress defines the jurisdictional scope of 2254 and it is unequivocally done so. A state prisoner may bring a habeas petition to challenge his custody in violation of the U.S. Constitution. As Judge Okuda mentioned, St. Cyr establishes the district court isn't free to refuse to hear a case on jurisdictional grounds absent a clear statement of congressional intent to repeal habeas. And there's been no such intent here by Congress. Congress has not placed any restrictions with respect to the definition and scope of custody. And as the Supreme Court has repeatedly recognized, the statute does not attempt to mark the boundaries of custody. And as Pizer recognized, the traditional function of the writ is to secure release from any illegal custody. And that's exactly what Mr. Santos is doing here. The writ is available to – And we've had good counsel tell us about that previously. Is there any principle basis upon which to distinguish the facts of this case from the past case? Sure, Your Honor. I mean, I heard counsel for Nettles make some arguments I expect you'd make the same. Is your case stronger than Nettles? And if so, why? Well, Your Honor, the writ exists for a state inmate to establish any unconstitutional – Your Honor, I would – I would state that both of the complaints that my client is making here, which is that the – he's in custody in violation of the Constitution, both because he's been indefinitely confined in the SHU and also because of the – essentially the transformation of his sentence to life without parole. And I think both of those are clearly cognizable under habeas, under clear U.S. Supreme Court precedent. And I can take them separately. First, if we're talking about a quantum change in custody from a higher level within the institution to a lower level within the institution, the Supreme Court has clearly said that's cognizable. So where did they say that? Because in Pizer it just says it is arguable. In – yes, Your Honor. It is arguable that habeas corpus will lie when a prisoner is put under additional and unconstitutional restraints during his lawful custody. It is arguable. But didn't address it. So what case actually said it's available? Yes, Your Honor. Pizer, within that language right near where you're quoting, specifically recognizes two cases, Johnson v. Avery and Wilwording v. Swenson. And in both of those cases, habeas jurisdiction was found to be appropriate. And the court in Pizer recognized that one could characterize those as condition of confinement cases, but in fact they – and could be cognizable under 1983, but were in fact cognizable under 2254. And Johnson v. Avery is specifically instructive here because the facts are almost identical. The inmate there was complaining about the unconstitutional process by which he was detained in solitary confinement, and he was seeking release from that level of custody to a less restrictive level of custody. And that – Pizer specifically recognized that case and did not upheld that case. So I would say Johnson v. Avery is very compelling here. Also, well, Skinner itself recognizes that there's a line of cases that discuss a quantum change in custody within the institution. And they're specifically citing Scalia's concurrence in Dotson, and Scalia relies on Seventh Circuit cases. Graham v. Brolin. Scalia says maybe, you know, maybe. Maybe Graham is right, but he doesn't actually state that. Well, I think he's saying that – put on one side that there – a quantum change in custody, I think he is recognizing that that's cognizable under habeas, but that it's a stretch in terms of the Dotson is what he's arguing. And that's what Skinner picks up as well. And also we can go back to Pizer, and they specifically cite N. Ray Bonner, which is also very similar to the facts here, where that inmate was in custody at a level that was inconsistent with the statute of conviction, and he was seeking release from that higher level of custody to a lower level of custody within the institution. So there's a – I think there's a long line of Supreme Court cases that say that Sonsis' case with respect to being released from the SHU to a lower level of custody within the institution is cognizable under habeas. So that would be a strong distinction between this case and the previous case. But also if we look at the issue with respect to parole in this case, it is also extremely compelling, and there is also a long line of Supreme Court cases as well as Ninth Circuit cases that would support this. In those challenges where the Supreme Court has said it's cognizable under habeas because there's a potential that the individual might get released sooner, it's far more tenuous connection than is here. If we look at Garlotti v. Fordyce, in that case the individual was serving two concurrent life sentences and was likely not going anywhere anytime soon, and that individual was simply trying to get an earlier date on which he might become suitable for parole. And that's similar to Darkin, which was serving 100 years and was deemed a dangerous offender, and that individual, as we've discussed, was simply looking to have more frequent parole hearings. Can you explain procedurally? It wasn't clear to me in your brief what Santos is – where he is in the procedural process such that being taken out of the SHU would make a difference, or having the gang validation overturned. How would that affect his parole release date? Well, there are, to some extent, two independent issues. Being released from the SHU is in and of itself – Yes, I know you argued that one. Okay. Then in terms of the designation of a gang associate, under California Regulations 3341.5, that individual is deemed such an extreme danger to the institution that he must be confined in solitary confinement. Now, the only issue with respect to release on parole is whether an individual presents a current danger. And it is simply untenable to argue that someone at the institution has been deemed so dangerous to the inmates and to the institution that he must be in solitary confinement that a parole board could turn around and say, oh, well, never mind, he doesn't present a danger to the community if he was released. That's simply – So the government says that he can, I think, revisit this issue on an annual or some periodic basis. Revisit – The gang validation determination. Well, the gang validation determination is on his record unless he is able to get it removed, and that is what he is seeking to do, and that is where the harm is coming from. Now, every six years, he's up for assessment to figure out whether he gets out of the shoe or not, but that doesn't determine whether or not the gang validation itself was valid, and that sticks with him and will impact his parole consideration for all times going forward. So that's – I think that answers your question in terms of distinguishing the two cases. Did you want to say – Yes, Your Honor. May it please the Court, Amy Daniel, Deputy Attorney General, appearing on behalf of Appellee. I assume in light of the discussion previous that the Court would not like to hear a further discussion of Dotson or the footnote in Skinner at this time. Oh, that was just my question. I don't represent those two good colleagues of mine. So give them whatever heck you think they deserve. Very well, then. The district court's order here should be affirmed because Santos' claim challenges the conditions of his confinement. He seeks release from one prison housing unit to another within the same institution by challenging an internal discretionary prison classification decision. How about the language the opposing counsel cites, Johnson v. Avery and Ray Bonner, and some language in Justice Scalia's concurrence? I'm afraid I'm not familiar with the first case. The second case, the Bonner case, is not analogous to this. In that case, the inmate was sent to a state institution when his criminal conviction, his sentence, did not allow him to be in the custody of the state. So what he was seeking there was a very different kind of release. In that case, the state authorities had no jurisdiction whatsoever to hold him, so he was seeking complete release from state custody. That's not analogous to the situation here where he's only seeking to move to more favorable housing conditions within the prison. And as to Justice Scalia's comments in his concurrence, the change in level of custody he refers there is a quantum change in the level of custody that was discussing parole. So the difference in terms of being physically confined in prison as opposed to out on parole with a very different type of custody, only constructive custody, that also is not analogous to moving from one prison housing unit to another prison housing unit, which could also still be very restrictive. Apart from the SHU, there's administrative segregation, level IV institutions. It's not analogous to the type of quantum change of custody that was at issue in Bonner or that Justice Scalia was discussing in his concurrence. I'm going to go ahead and address counsel's arguments concerning factor duration of confinement, particularly the suggestion that overturning the gang validation would make him a more suitable candidate for parole and that that's a basis for finding habeas jurisdiction. It's based on complete speculation as to how a future parole board may or may not view him as a parole candidate. So as I understand the argument that the most important factor in the parole determination is whether you're a danger to the community and that the gang validation is based on you are a danger to the community. And so long as that validation is on his record, then he will never be eligible for parole. That's the argument as I understand it. What's wrong with that argument? What's wrong with that argument is that it incorrectly conflates prison management issues with the question before the board. What CDCR is looking at in terms of gang management is an attempt to prevent gang activity from occurring. When they're looking at these validations and putting inmates into restrictive housing to cut back on their ability to communicate, they're trying to take down a complete organization and break down its ability to function by putting them in these restrictive conditions. It's not necessarily an indication that any particular inmate is physically dangerous. Well, but as the gang validation, it seems like Santos is deemed, and I think it's called, a severe threat to the safety of others. But, and I think as Judge Ikuto was asking, California precludes parole suitability unless a prisoner does not pose an unreasonable risk of danger to society. So how can this removal or the expungement of the gang validation not affect his parole eligibility or his hearing date? Well, the board has discretion to look at the facts and determine for themselves how important it is or is not. Some of the gang validation criteria here were things like symbols, having contact communication for other people that had been identified as being associated with the gang. A parole board could certainly look at those circumstances and find that they're relatively innocuous, regardless of the decision to house him in the SHU. However, another one of the gang validation points here was a stabbing incident. The board could also look at that and decide, regardless of whether or not they think that's a gang-related stabbing, they could reject for themselves the idea that it's gang-related, so as to support a validation, but still decide that the very act of the stabbing itself would make Santos too much of a danger to release. So it's not the fact of this validation existing or not existing that would control the board's discretion. There was a recent California appellate case, In re LeBlanc, that's somewhat analogous here. In footnote 4 of that opinion, the court was reviewing a parole denial, and they noted that the inmate had a recent disciplinary for possession of a controlled substance. And they brought it up because the board did not cite that disciplinary as a basis for denying this inmate parole, and therefore the court noted that they would not consider it either. But it's just to demonstrate that simply because there's something negative on an inmate's record does not require the board to view it as determinative of the ultimate question of whether or not an inmate poses a risk. There was also an argument, if I'm remembering it right, that while he was in the SHU he couldn't accumulate credits or post-conviction credits. What's the status of that or the import of that? The record, there's not a lot of facts in the record, but we do see Santos says that he was convicted in 1996 of a life term plus nine years. Under California law, that determinant life term, the determinant portion of that term would be served first, and typically there's a seven-year minimum on life terms. The initial parole consideration hearing would be held a year before the minimum, so nine years plus six years. Even if he had not earned a single day of credit thus far during his incarceration, that initial parole eligibility date would have passed. So it doesn't make any difference for parole eligibility whether he's in the SHU or not, is that correct? Any return of credits at this point, he's already had an initial parole consideration hearing. It can't be held any sooner. So given what the commissioners consider in determining whether one should be allowed parole or not, which have some pretty wide circumstances, what is your best argument that if I apply Dockett, or I apply those that this case should not get a remand? Dockett still requires a sufficient. Not Dockett. I'm sorry. Supposing that I go the other way. Dotson. Yes. Sorry. Dotson v. Chase still requires a sufficient nexus to the factor duration of confinement to sustain habeas jurisdiction. In that case, the inmate was seeking a change to the parole procedures themselves such that he would necessarily have an advanced hearing and a sooner opportunity for release. In this case, Mr. Santos is already eligible for parole. He already has that opportunity. What he's challenging is essentially a fact that he believes may influence how the board exercises its discretion. The board certainly can consider it one way or another. But beyond that, it's complete speculation as to how it would weigh in with the entirety of his record, his pre-incarceration, the circumstances of his commitment offense, his understanding of that commitment offense, whatever else is in his post-conviction record. All of that discretion erodes that necessary connection to factor duration. So if he brought a 1983 action challenging the gang validation, those proceedings, the State would not say there was any favorable termination bar there, that he was free to pursue it under 1983. Is that correct? Correct, Your Honor. We're not trying to win both ways unfairly procedurally. Unless there are further questions. Apparently not. Thank you, Your Honor. Just quickly under Dockin, the court does not substitute its discretion for the discretion of the parole board. So the issue is whether there's a substantial nexus. And as I've argued, the connection here between his gang validation earlier release is actually stronger than in Garlotti v. Fordyce and arguably in Butterfield v. Bale, where this Court actually said it had to be brought in habeas and also in Dockin itself. Congress clearly knows how to place limitations on 2254 when it wants to. And it's clear that the writ is available to a State inmate to challenge the unconstitutional deprivation of his liberty interests and thus his custody in violation of the U.S. Constitution, which is what Mr. Santos is doing here. Why not 1983? Why not proceed under 1983? Well, he potentially could proceed under 1983, but he's actually exhausted the administrative remedies, the State procedural requirements that Congress has imposed and accepted the limited remedy that Congress has said is available under 2254. And so the two statutes are not mutually exclusive. And it does seem strange that the State is arguing that this individual who has shown deference to the State and given the State its opportunity to correct the issue and accepted a very limited remedy instead of the more general remedies available under 1983, that he could somehow be preempted by 1983. That just logically doesn't make sense. Thank you. The case of Santos v. Holland is submitted. And we'll next hear arguments in United States v. Neal.
judges: Ikuta, Smith, Murguia